UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

HAMPTON BEACH DEVELOPMENT LLC : CIVIL ACTION
AND CENTERPLAN DEVELOPMENT : NO.:
COMPANY, LLC, : 3:08CV1375AWT
    Plaintiffs :
: 3O8CV01375 AWT
vs. :
:
INFINITY FUNDING GROUP, INC., :
J.C.F. DEVELOPMENT, INC., NEIL B. :
SINGER AND PAUL J. TANTILLO, :
    Defendants : SEPTEMBER 9, 2008

---

## COMPLAINT

Plaintiffs Hampton Beach Development LLC ("HBD") and Centerplan Development Company, LLC ("CDC"), for their Complaint against defendants Infinity Funding Group, Inc. ("IFG"), J.C.F. Development, Inc. ("JCF"), Neil B. Singer ("Singer") and Paul J. Tantillo ("Tantillo"), allege, upon knowledge as to their own acts and upon information and belief as to the acts of others, as follows:

## THE PARTIES

1. HBD is a New Hampshire limited liability company with a principal place of business at 185 Asylum Street, Hartford, Connecticut 06103.

2. CDC is a Connecticut limited liability company having a principal place of business at 185 Asylum Street, Hartford, Connecticut 06103.

3. IFG is a New York corporation with a principal place of business at 630 Johnson Avenue, Bohemia, New York 11716.

4. JCF is a New York corporation with a principal place of business at 630 Johnson Avenue, Bohemia, New York 11716.

5. Singer is a resident and citizen of New York with an address at 1 Wintergreen Drive West, Melville, New York 11747.

6. Tantillo is a resident and citizen of New York with an address at 3 Fairway Drive, Rocky Point, New York 11778.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332. The matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs and is between citizens of different states.

8. Venue properly lies with the District of Connecticut because a substantial part of the events or omissions giving rise to the plaintiffs' claims occurred in Connecticut.

## COUNT ONE

(Fraud)

9. In or about January 2008, IFG, acting through Singer and Tantillo, approached CDC with respect to a proposed condominium hotel project in Hampton Beach, New Hampshire. The project was then under the control of a third party – Fatima Realty Trust ("Fatima") – which

(i) had acquired land for the project; (ii) had retained engineers, architects and other professionals to prepare preliminary site plans and architectural renderings; and (iii) had obtained certain governmental land use approvals. Fatima had financed the purchase of the land and such initial development activities through a loan facility from Amalgamated Bank acting as trustee for an employee benefit trust fund.

10. Singer and Tantillo represented to CDC (i) that Fatima and its principals were inexperienced in real estate development; (ii) that the project was in distress and the loan was in default; (iii) that IFG had a close relationship with Amalgamated Bank; (iv) that Amalgamated Bank had brought the project to their and IFG's attention as part of an effort to resolve its problem loan through completion of the project; and (v) that Amalgamated Bank was willing to restructure the terms of the loan – including increasing the maximum amount of the loan – if new principals considered capable of completing the project were brought into the project.

11. Singer and Tantillo solicited CDC – whose principals were experienced in real estate development - to participate in the project, along with IFG and Fatima Realty Trust. Under the structure proposed by Singer and Tantillo, CDC or its designee would invest capital into the project in exchange for a 25.5% equity interest, and also would act as project manager in exchange for an agreed fee. IFG or its designee would also own 25.5% of the equity in the project, but would not be required to invest capital. Fatima would contribute the land while retaining a 49% passive ownership interest in the project.

12. Singer and Tantillo repeatedly represented to CDC that Amalgamated Bank had agreed that all of the capital investment by CDC or its designee would be returned within approximately three months of the closing of the restructured loan, using funds to be advanced by Amalgamated Bank for that purpose in the first three monthly construction draws under the to-be restructured construction loan facility. This representation was made to induce CDC or affiliates to advance funds and expend efforts in pursuit of the project. Such representation was false and was known to be false when made.

13. In reliance on the above described representations:

   a. CDC caused new entities to be formed and negotiated operating agreements to govern the relationships by and among the parties to be involved in developing the project, as well as a development agreement to govern CDC's role as project manager. More specifically, CDC and its principals caused HBD to be formed, as CDC's designee to own a 25.5% interest in the project. IFG and/or its principals designated JCF to own a 25.5% interest in the project. In late April 2008, an operating agreement for 377 Ocean Boulevard LLC – a newly formed New York limited liability company – was entered into between HBD and JCF. At or about that time, 377 Ocean Boulevard LLC and Fatima, in turn, entered into an operating agreement for Royale Shores Development LLC – a newly formed New Hampshire limited liability company, to which Fatima was to deed the land for the project upon the closing with Amalgamated Bank of the restructured loan agreement.

b. CDC incurred legal and other expenses in investigating and pursuing the project, including without limitation incurring expenses to draft and negotiate the above described operating agreements and development agreement.

c. At the request of Singer and Tantillo, on or about April 8, 2008 CDC paid $50,000 to IFG for the purpose of advancing funds to or on behalf of one of the principals of Fatima in order to stop a foreclosure on an unrelated property owned by such Fatima principal. Singer and Tantillo represented that without this payment the Fatima principal would file a bankruptcy petition and that this would prevent the project from going forward. The representation that $50,000 was needed was false and was known to be false when made. In fact, IFG advanced only approximately $30,000 for the purpose it represented, and it has retained the balance.

d. Acting with the knowledge of Singer, Tantillo requested that CDC advance $5,000 to retain a New Hampshire law firm to represent the venture as local counsel in various matters. CDC paid such sum to such law firm on or about April 18, 2008.

e. At the request of Singer and Tantillo, on or about April 28, 2008 CDC engaged a real estate professional, for a fee of $25,495.81, to prepare a market study analyzing the local condominium market and the marketability of the units in the contemplated project. CDC paid such sum, by payment of an initial retainer of $13,750 on or about April 28, 2008 and the balance on or about July 1, 2008.

14. All of the aforesaid actions by CDC were taken with the knowledge – and in most cases at the express request of – IFG, Singer and Tantillo.

15. All of the funds advanced by CDC described were intended and agreed to be treated as part of $500,000 initial investment to be made by CDC or its designee, which was to be returned, as described above, through the initial three construction draws from Amalgamated Bank under the to-be restructured loan.

16. At the times it paid – or obligated itself to third parties to pay – the amounts described above, CDC and HBD were unaware of the falsity of the representations made by IFG, Singer and Tantillo that Amalgamated Bank would permit the return of such funds – together with the balance of the equity investment to be made by CDC or its designee – through initial construction loan advances. CDC and HBD did not learn of the falsity of such representations until April 29, 2008, when representatives of CDC and HBD first met with the Amalgamated Bank officer responsible for the loan. At that time, the Amalgamated Bank officer directly contradicted and disavowed such representations made by IFG, Singer and Tantillo.

17. Despite demand by CDC and HBD, IFG, JCF, Singer and Tantillo have refused to repay any portion of the above described sums paid by or on behalf of CDC and HBD.

18. As a result of the above described fraudulent misrepresentations, CDC and HBD have been damaged in the amount of funds advanced in pursuit of the project as described above.

## COUNT TWO

(CUTPA)

1-17. The allegations of Paragraph 1 through 17 of Count One are incorporated herein by reference.

18. The defendants are each engaged in the business of commercial real estate finance and investment.

19. The defendants each knowingly and intentionally participated in the conduct alleged herein.

20. The aforesaid conduct by the defendants constitutes unfair or deceptive acts or practices in the conduct of trade or commerce within the meaning of the Connecticut Unfair Trade Practices Act, C.G.S. §42-110a et seq.

21. Such unfair or deceptive conduct caused ascertainable loss to the plaintiffs in the amount of the funds advanced in pursuit of the project as described above.

# **PRAYER FOR RELIEF**

WHEREFORE, the plaintiffs respectfully request an entry of judgment from this Court:

A. Awarding compensatory damages;
B. Awarding punitive damages including attorneys fees pursuant to C.G.S. §42-110a et seq.;
C. Granting such other relief as may be appropriate.

Dated at Hartford, Connecticut this 9th day of September, 2008.

HAMPTON BEACH DEVELOPMENT
LLC AND CENTERPLAN DEVELOPMENT
COMPANY, LLC,
    Plaintiffs

By:_____
David S. Hoopes
Mayo Crowe LLC
CityPlace II
185 Asylum Street
Hartford, CT 06103-3426
Fax: (860) 275-6819
E-mail: dhoopes@mayocrowe.com
Federal Bar No.: CT 06069
Its Attorneys