IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------------x
:
HAMPTON BEACH DEVELOPMENT LLC        :      3:08 CV 1375 (CSH)
AND CENTERPLAN DEVELOPMENT           :
COMPANY, LLC                         :
                                     :
v.                                   :
                                     :
INFINITY FUNDING GROUP, INC.,        :      DATE: OCTOBER 30, 2009
J.C.F. DEVELOPMENT, INC., NEIL B.    :
SINGER AND PAUL J. TANTILLO          :
                                     :
------------------------------------------------------------x

RECOMMENDED RULING ON MOTION FOR DEFAULT JUDGMENT AND DAMAGES

On September 10, 2008, plaintiffs Hampton Beach Development LLC and Centerplan Development Company, LLC commenced this action against defendants Infinity Funding Group, Inc. ["IFG"], J.C.F. Development, Inc., Neil B. Singer ["Singer"] and Paul J. Tantillo ["Tantillo"](Dkt. #1), in which complaint plaintiffs allege fraud and a violation of the Connecticut Unfair Trade Practices Act ["CUTPA"], CONN. GEN. STAT. § 42-110a, arising out of a real estate development relationship between the parties. On October 9, 2008, plaintiffs filed their first Motions for Entry of Default pursuant to FED. R. CIV. P. 55(a), which were granted against all defendants on October 17, 2008. (Dkts. ##9-12). On November 21, 2008, counsel filed an appearance on behalf of defendants, along with a Motion to Set Aside Default and answer with a counterclaim for breach of contract by plaintiffs. (Dkts. ##16-17, 19). On May 20, 2009, Senior United States District Judge Charles S. Haight granted defendants' Motion to Set Aside Default. (Dkt. #22).

On July 14, 2009, plaintiffs moved for the entry of default as to liability only on grounds that defendants failed to comply with a discovery order issued by Judge Haight.

(Dkt. #29). The next day, Judge Haight issued an order warning defendants to respond to plaintiff's Motion for Entry of Default on or before August 4, 2009. (Dkt. #30). On July 23, 2009, counsel for defendants filed his Motion to Withdraw, which, after notice to defendants, was granted on August 11, 2009. (Dkts. ## 31-32, 35). That same day, Judge Haight granted plaintiff's Motion for Default Judgment as to liability only. (Dkt. #34). On August 27, 2009, Judge Haight referred the matter to this Magistrate Judge. (Dkt. #36). In lieu of a hearing on damages, on September 17, 2009, plaintiffs filed their Motion for Judgment pursuant to Fed. R. Civ. P. 55(b) and affidavit of damages in support.[1] (Dkt. #37). On October 6, 2009, plaintiffs filed an Amended Motion for Judgment. (Dkt. #38).[2] Defendants have not filed a timely response to plaintiffs' motions.

For the reasons stated below, judgment is entered against defendants Infinity Funding Group, Inc., J.C.F. Development, Inc., Neil B. Singer and Paul J. Tantillo in the amount of $87,495.81.

## I. DISCUSSION

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, this Court has the discretion to enter a default judgment without a hearing, as long as the party against whom

---

[1] Such referral is consistent with the letter of Rule 55(b)(2) which reads, in relevant part:

> If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

Attached to plaintiffs' Motion is an affidavit of Robert A. Landino, sworn to September 11, 2009 ["Plaintiffs' Aff't 1"].

[2] Attached to plaintiffs' Amended Motion is an affidavit of Landino, sworn to October 2, 2009 ["Plaintiffs' Aff't 2"], and attached as Exhibits 1-4 are copies of payments made by plaintiffs.

the judgment is sought has notice of the impending judgment, and detailed affidavits or documentary evidence are available to ensure that there is a basis for the specific judgment entered.  See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)(citing Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 39-40 (2d. Cir 1989)); see also Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d. Cir. 1993)(a single affidavit only partially based on real numbers would not be enough); see Sony Music Entm't Inc. v. Pedestal, Inc., No. 01 CIV. 403 RLC FM, 2002 WL 1226861, at *2 (S.D.N.Y. Apr. 9, 2002)(citations omitted)("The Court need not hold a hearing . . . as long as it has: (i) determined the proper rule for calculating damages on the claim, and (ii) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment.").  Further, as the Second Circuit has held, "[i]t is, of course, ancient learning that a default judgment deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic, 109 F.3d at 108 (multiple citations omitted).  Accordingly, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.  Cablevision of S. Conn., L.P. v. Smith, 141 F. Supp. 2d 277, 283 (D. Conn. 2001)(citing Transatlantic, 109 F.3d at 108).

In the present case, plaintiffs allege that in or about January 2008, defendant IFG, acting through defendants Singer and Tantillo, approached Robert Landino, as principal of the plaintiff LLCs, with respect to a proposed condominium hotel project in Hampton Beach, New Hampshire.  (Complaint ¶ 9; Plaintiffs' Aff't 1, ¶ 4; Plaintiffs' Aff't 2, ¶ 4).  The project was then under the control of Fatima Realty Trust ["Fatima"], which acquired the land, retained engineers, architects and other professionals to prepare preliminary site plans and architectural renderings, and obtain governmental land use approvals.  (Id.).  Fatima

financed the purchase of the land and the initial development activities through a loan from Amalgamated Bank acting as trustee for an employee benefit trust.  (Id.).

Singer and Tantillo represented to Landino that (1) Fatima and its principals were inexperienced in real estate development; (2) the project was in distress and the loan was in default; (3) IFG had a close relationship with Amalgamated Bank; (4) Amalgamated Bank had brought the project to their and IFG's attention as part of an effort to resolve its problem loan through completion of the project; and (5) Amalgamated Bank was willing to restructure the terms of the loan, including increasing the maximum amount of the loan, if new principals considered capable of completing the project were brought into the project. (Complaint ¶ 10; Plaintiffs' Aff't 1, ¶ 5; Plaintiffs' Aff't 2, ¶ 5).  Singer and Tantillo solicited Landino and CDC to participate in the project, along with IFG and Fatima Realty Trust, under which structure CDC or its designee would invest capital into the project in exchange for a 25.5% equity interest, and would act as a project manager in exchange for an agreed fee, IFG or its designee would own 25.5% of the equity, but would not be required to invest capital, and Fatima would contribute the land while retaining 49% passive ownership in the project.   (Complaint ¶ 11; Plaintiffs' Aff't 1, ¶ 6; Plaintiffs' Aff't 2, ¶ 6).

In reliance on Singer and Tantillo's representations to Landino and CDC that Amalgamated Bank would return all of the capital investment within three months of the closing of the restructured loan, CDC caused new entities to be formed and negotiated operating agreements to govern the relationships by and among the parties involved in developing the project, as well as a development agreement to govern CDC's role as project manager; CDC incurred legal and other expenses in the amount of $7,000 in investigating and pursuing the project;  at the request of Singer and Tantillo, on or about April 8, 2008,

CDC paid $50,000 to IFG as an advance of funds to or on behalf of one of the principals of Fatima to stop a foreclosure on an unrelated property, without which the Fatima principal would file a bankruptcy petition that would prevent this project from going forward; on April 18, 2008, at the request of Tantillo, CDC advanced $5,000 to retain a New Hampshire law firm to represent the venture as local counsel; and, ten days later, at the request of Singer and Tantillo, CDC engaged a real estate professional for a cost of $25,495.81 which it paid in two installments. (Complaint ¶ 13(a)-(e); Plaintiffs' Aff't 1, ¶ 8(a)-(e); Plaintiffs' Aff't 2, ¶ 8(a)-(e), Exhs. 1-4). The total sum paid by CDC in reliance of defendants' representation was $87,495.81, which amount was to be treated as part of the initial investment of $500,000 made by CDC, which was to be returned through the initial three construction draws from Amalgamated Bank under the to-be restructured loan. (Plaintiffs' Aff't 1, ¶¶ 9-11; Plaintiffs' Aff't 2, ¶¶ 9-11).

At the time CDC paid, or obligated itself to third parties to pay, the amounts described above, CDC and HBD were unaware of the falsity of the representations made by defendants that Amalgamated Bank would permit the return of such funds, together with the balance of the equity investment to be made by CDC or its designee, through initial construction loan advances. (Complaint ¶ 16; Plaintiffs' Aff't 1, ¶ 12; Plaintiffs' Aff't 2, ¶ 12). Plaintiffs did not learn of the falsity of these representations until April 29, 2008 when plaintiffs met with the Amalgamated Bank officer responsible for the loan who directly contradicted and disavowed the representations made by plaintiffs. (Id.). Despite demand by plaintiffs, defendants have refused to repay any portion of the sums paid by or on behalf of plaintiffs. (Complaint ¶ 17; Plaintiffs' Aff't 1, ¶ 13; Plaintiffs' Aff't 2, ¶ 13).

If the documentary evidence of damages is sufficient to justify entry of a judgment

without a hearing, and no objection is made by defendants thereto, this Court will not hesitate to exercise its discretion under Rule 55(b)(2) and grant plaintiffs the judgment sought.  See Ackerman v. Levine, 788 F.2d 830, 842 (2d Cir. 1986)("By defaulting, a defendant ensures that a judgment will be entered against him, and assumes the risk that an irrevocable mistake of law or fact may underlie that judgment.")(citations omitted).  In this case, the proof of the damages that plaintiffs are seeking from defendants has been provided in detailed affidavits and supporting documentary evidence, including copies of the checks evidencing payment, which substantiate the harm plaintiffs claim to have suffered.  (See Plaintiffs' Aff't 1; Plaintiffs' Aff't 2 & Exhs. 1-4).  Additionally, plaintiff has served copies of the above to the defendants.[3]  Accordingly, plaintiffs' request for entry of default judgment is **granted in the amount of $87,495.81.**

## II. CONCLUSION

For the reasons stated above, this Court recommends that judgment enter against defendants Infinity Funding Group, Inc., J.C.F. Development, Inc., Neil B. Singer and Paul J. Tantillo in the amount of $87,495.81.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same);** FED. R. CIV. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file

---

[3] See Dkt. #37, at 3 (plaintiffs' counsel certifies "that on September 17, 2009, a copy of the foregoing Motion was filed electronically and served by mail on anyone unable to accept electronic filing. . . .").

See Dkt. #38, at 3 (plaintiffs' counsel certifies the Amended Motion for Judgment was filed electronically on October 6, 2009, and additionally, because counsel for defendants no longer has an appearance in this case, plaintiffs' counsel further certifies that both the Amended Motion for Judgement and the underlying Motion for Judgment were served on the parties by first class mail).

**timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

      Dated at New Haven, Connecticut, this 30th day of October 2009.

                                /s/Joan Glazer Margolis, USMJ
                                Joan Glazer Margolis
                                United States Magistrate Judge